J-S20014-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: H.R.J., A MINOR | : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.J. | : | No. 1578 WDA 2018 |

Appeal from the Order Entered October 4, 2018
in the Court of Common Pleas of Allegheny County
Orphans' Court at No(s):  CP-02-AP-0000067-2018

BEFORE:  GANTMAN, P.J.E., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED MAY 20, 2019**

A.J. ("Father") appeals from the Order granting the Petition filed by the Allegheny County Office of Children, Youth and Families ("CYF"), and involuntarily terminating Father's parental rights to his daughter, H.R.J. ("Child"), pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b).[1]  We affirm.

Child was born to Father and Mother in October 2011.  On July 26, 2016, Child was admitted to Children's Hospital with bruising to her face, chest, lower back, buttocks and thighs.  Father admitted to striking Child, and was subsequently charged with and convicted of simple assault of a victim less than six years old.  Father was sentenced to twelve months of probation, and

_____

[1] The trial court also involuntarily terminated the parental rights of Child's mother, A.K. ("Mother").  Mother has not filed an appeal from the termination of her parental rights, nor is she a party to the instant appeal.

ordered to attend anger management and parenting classes, and to have no unsupervised contact with Child.

CYF subsequently became aware of Father's abuse of Child, and requested a shelter hearing. On July 27, 2016, following a hearing, Child was adjudicated dependent. Child was placed into the home of her paternal grandfather and his paramour.

On March 19, 2018, CYF filed Petitions seeking the involuntary termination of Father's and Mother's parental rights to Child. On October 9, 2018, following a hearing, the trial court granted CYF's Petition pursuant to 23 Pa.C.S.A. § 2511(2), (5), (8), and (b). Father timely filed a Notice of Appeal and a Concise Statement of matters complained of on appeal.

Father raises the following issues for our review:

1. Did the trial court abuse its discretion and/or err as a matter of law in granting the [P]etition to involuntarily terminate Father's parental rights pursuant to 23 Pa.C.S.[A.] §[ ]2511(a)(2), (5), and (8)?

2. Did the trial court abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Father's parental rights would best serve the needs and welfare of [C]hild pursuant to 23 Pa.C.S.[A.] §[ ]2511(b)?

Father's Brief at 6.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency

cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

As we discussed in [*In re*] *R.J.T.*, [9 A.3d 1179, 1190 (Pa. 2010),] there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (some citations omitted).

We will address Father's claims together. First, Father alleges that CYF failed to present clear and convincing evidence that Father was unable to care for Child pursuant to subsections 2511(a)(2), (5) and (8). *See* Father's Brief at 18-21. According to Father, CYF's case rested largely on the fact that Father failed to consistently attend therapeutic sessions through Three Rivers Adoption Council, ("TRAC"). *Id.* at 20. Father argues that his attendance at the TRAC sessions was not a prerequisite to reunification, and therefore, his

- 3 -

failure to attend all of the sessions could not be a basis for termination. *Id.* at 20-21. According to Father, the classes were designed to assist with the reunification process, and the evidence at the termination hearing proved that Father had positive interactions with Child and displayed positive parenting skills. *Id.*

In his second claim, Father alleges that CYF did not present clear and convincing evidence that termination of Father's parental rights is in Child's best interests pursuant to Section 2511(b). *See* Father's Brief at 21-24. Father claims that Child would suffer an emotional setback if Father's parental rights were terminated. *Id.* at 22-23. Father points to the testimony of Dr. Neil Rosenblum, who stated that it "would be a disaster for [Child] to totally be shut out from having contact with [Father,]" and that Child "needs her relationship with [Father]…." *Id.* at 22 (citation to record omitted). Father argues that permanent legal custody, rather than adoption, would better serve Child's interests. *Id.* at 23-24.

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [subsection] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [subsection] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond

- 4 -

between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007). This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a), along with consideration of Section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

Here, we will consider subsections 2511(a)(2) and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. …

23 Pa.C.S.A. § 2511(a)(2), (b).

The Supreme Court set forth our inquiry under Section 2511(a)(2) as follows:

> [Section] 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that the repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. …
>
> This Court has addressed incapacity sufficient for termination under [Section] 2511(a)(2):
>
>> A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

*In re Adoption of S.P.*, 47 A.3d at 827 (quotation marks, brackets, and citations omitted).

This Court has stated that the focus in terminating parental rights under Section 2511(a) is on the parent, but it is on the child pursuant to Section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). In reviewing the evidence in support of termination under Section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include intangibles such as love, comfort, security, and stability. In *In re*

- 6 -

*E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (some citations and quotation marks omitted; brackets omitted).

A parent's abuse and neglect are likewise a relevant part of this analysis:

[C]oncluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent. … Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (citations and quotation marks omitted).

Our Supreme Court has stated that the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition, and that "[e]ven the most abused of children will often harbor some positive emotion towards the abusive parent." *See In re T.S.M.*, 71 A.3d at 267. The Supreme Court stated that "[t]he continued attachment to the natural parents, despite serious parental rejection through abuse and

neglect, and failure to correct parenting and behavior disorders which are harming the children cannot be misconstrued as bonding." *Id.*

Thus, the court may emphasize the safety needs of the child. *See In re K.Z.S.*, 946 A.2d at 763 (affirming involuntary termination of parental rights, despite existence of some bond, where placement with mother would be contrary to child's best interests). "[A] parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, [and] safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004).

In its Opinion, the trial court addressed Father's claims and concluded that they lack merit. *See* Trial Court Opinion, 1/11/19, at 4-7 (pages unnumbered). We agree with and adopt the sound reasoning of the trial court, and affirm on this basis with regard to Father's claims. *See id.*

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/20/2018

- 8 -

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

| | |
|---|---|
| IN THE INTEREST OF: | **CHILDREN'S FAST TRACK APPEAL** |
| H.R.J., | CP-02-AP-000067-2018 |
| | 1578 WDA 2018 |
| A MINOR. | |
| | **OPINION OF THE COURT** |

## OPINION

Before the Court is a matter arising from an Order granting the petition of the Allegheny

County Office of Children, Youth, and Families ("CYF") for Termination of the Parental Rights

("TPR") of A.J., the Biological Father ("Father") of H.R.J. ("child"), pursuant to 23 Pa. C.S.

§§2511 (2), (5), and (8) and §2511 (b)  The Court engaged in a two-step analysis by which it

found and determined grounds to terminate under 23 Pa. C.S. §§2511 (a)(2),(5) and (8) existed;

then, this Court addressed the child's needs and welfare under 23 Pa. C.S. §2511 (b). [See *In re

J.F.M.*, 71 A.3d 989 (Pa. Super 2013)] For the reasons set forth below, the Order of this Court

terminating the parental rights of Father A.J. should be affirmed.

A party seeking termination of parental rights must establish by clear and convincing

evidence that the parent's conduct satisfies at least one of the statutory grounds for termination;

if it is determined that this burden of proof has been met, then the trial court must next consider

the second step of the process, which entails a determination of whether termination best serves

the needs and welfare if the child. *In re S.D.T., Jr.*, 934 A.2d 703 (Pa. Super 2007)  In

reviewing an order terminating parental rights, the appellate court "is limited to determining

whether the decision of the trial court is supported by competent evidence. Absent an abuse of

discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." *In re S.H.*, 879 A.2d 802, 809 (Pa. Super 2005) When determining whether terminating parental rights serves the child's needs and welfare, the Court must examine the nature and status of any bond between the parent and the child and consider whether severing that bond would destroy a relationship that is "necessary and beneficial." *In re P.A.B.*, 570 A.2d 522, 525 (Pa. Super 1990). Furthermore, the trial court is "the sole determiner of the credibility of witnesses and resolves all conflicts in testimony." *Id.* To affirm, the appellate court need only agree that grounds exist for termination under any one of the subsection of applicable law. *Adoption of C.J.P.*, 114 A.3d 1046, 1050 (Pa. Super 2015). Pennsylvania law provides for the termination of a parent's rights on, inter alia, any of the following grounds:

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

[...]

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511 (a)(1), (a)(2), (a)(8).

Moreover,

[t]he court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a) (1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

A hearing was conducted in regards to the "TPR" petition on October 4, 2018. The Court heard testimony from numerous witnesses, including the Biological Father. The testimony accepted was that the minor child came into the care of Allegheny County Children Youth and Families ("CYF") on July 27, 2016 [NT 6, ln 8-9] and was adjudicated dependent on September 7, 2016. [NT 6, ln 10-11] The child, H.R.J., was placed into the home of her paternal grandfather and his paramour (hereinafter referred to as "foster parents") for the past twenty-two months. [NT 19, ln 4-10] The child was born to A.J. and A.K., who abandoned the child. The child came into the care of CYF as a result of a physical assault by Father which resulted in harm to the child and a subsequent diagnosis of Post Traumatic Stress Disorder. [NT 6, ln 15-25; NT 7, ln 13-22]. Father was prosecuted and convicted for simple assault of a victim under the age of twelve. [NT 17, ln 7-13] As a result of the criminal prosecution, Father was placed on probation for the criminal matter with many conditions similar to the goals of the dependency proceeding. CYF reunification goals were established to include: scheduled visitation with the child; anger management; mental health evaluation and compliance with treatment; housing requirements;

and to comply/maintain contact with the agencies involved with supervision over both matters. [NT 14, ln 13-18].

Throughout the life of this case, Father's parenting and participation has been at issue. Credible testimony was provided by Elva Chavez, a CYF caseworker assigned to this matter. Ms. Chavez testified that Father did complete the anger management and mental health programs at Positive Pathways, which were also required by the criminal prosecution. Father, however, failed to successfully complete family therapy with the child. Not completing family therapy yielded noncompliance with the CYF goal of mental health treatment, because family therapy was an important element as the original reason for removal was an assault by Father. [NT 15, ln 7-14] Caseworker Chavez testified credibly regarding concerns of the Father's ability to parent the child as he has not had the child in his care for nearly two years. Further, when last in his sole custody the child suffered physical abuse. [NT 16, ln 16-14] The caseworker noted that in addition to the above, the Father lacked consistency with Court ordered visitation schedule. From March 2017 to January 2018, Father met for visits 8 out of 45 times or less than 20% of the permitted visitation schedule. [NT 18, ln 1-2]. It is this lack of consistency that has plagued Father throughout this case.

The Court heard from witness Lily Vandik of Three Rivers Adoption Council. This agency received a referral for the child's family to perform an assessment to include psychosocial evaluation. Ms. Vandik detailed to the Court the numerous attempts she and her colleague made to schedule evaluations with the Father. Father and child were scheduled to meet with the agency worker bi-weekly for therapy session through Three Rivers Adoption Council (TRAC). The goal of the meetings were to address Father's coping skills and identify triggers that cause him anger, specifically which gave rise to the removal of the child and the

initiation of dependency proceedings. [NT 53, ln 11-19] In total, Father sporadically attended 7 sessions between February 2018 and July 2018 and he missed or cancelled sessions in between. [NT 52, ln 4-11] Ms. Vandik offered Father an open schedule to avoid potential scheduling conflicts so that he could meet his goals of family therapy, but Father chose not to attend this Court's mandated sessions because "*he* felt that he was getting what was needed at a different service provider," despite the Court order [NT 54, ln 7-16]. As a result of this inaction, Ms. Vandik closed the referral in the case. [Id. at 20-23]

This Court found that Father only adhered to the CYF goals that were consistent with the Probation Department of the Criminal Division. Father failed to adequately address any additional goals set forth by this Court pertaining to reunification and only positively responded when a criminal penalty or sanction existed. It was this Court's finding that reunification was not as much of a priority as was his desire to complete his probation.

The pattern set by the Father of failing to follow through with the goals of reunification, as set by the Court, was further reinforced by the testimony of Dr. Neil Rosenblum, an expert from Allegheny Forensic Associates, who is a court-appointed psychological evaluator. It was Dr. Rosenblum's expert opinion that Father has not made being a parent a priority nor has he adequately addressed or remedied these issues. Throughout his testimony, Dr. Rosenblum detailed Father's lack of follow through in his commitments to therapy, whether it be his failure to follow through with TRAC visitation or more importantly, Father not being able to demonstrate the ability to understand and effectively respond to the child's emotional needs and existing adjustment concerns.[1] [See: Psychological Evaluation, Dr. Neil Rosenblum, Ph.D.; Court Exhibit]

---

[1] Q. [Ms. Abernathy] You also said that the goal of reunification was no longer viable?

Further, Dr. Rosenblum opined that the environment, provided by her foster parents, provides the child with the stability and security she needs to move forward in her adjustment. [NT 107, ln 1-3] In his expert clinical opinion "that she has a very meaningful and positive attachment to the foster parents, who have been psychological parents now for the last two years." [NT 96, ln 17-20]

This Court acknowledged through the Father's testimony that he loves the child and the child loves her Father. The Court identified that an emotional bond existed between Father and child. However, after deliberate consideration and review of the record, the Court made a specific finding that the emotional bond is significantly outweighed by the inability for Father to effectively parent the child in light of his serious lack of commitment to be a parent, respond to the child's emotional needs and her existing adjustment concerns. It is in this Court's opinion that a **significant** (emphasis added) bond existed with the foster parents so much that the child thinks of them as mom and dad, and that foster parents are providing the needs and welfare of the child. The fact that a biological parent loves their child is only one component of parenting. There are other components necessary to effectively parent, which Father falls short. The components of permanency, trust, and emotional dependency have been effectively provided to the child by the foster parents for the past twenty-two months. A Father owes his child a duty to provide them with love, protection, guidance and support. (See In re B.M.N., 856 A.2d 847, 855 (Pa. Super. 2004). A child's needs both, "'physical and emotional, cannot be met by a merely

---

A. [**Dr. Rosenblum**] Well, father has had some starts and stops and some spurts of visitation. To cut to the chase, if we look at his actions over the last two and one half years he has not been able to make his daughter a priority. He has not been able to stick with the TRAC program. He's not been able to visit consistently. He has floundered in his life.... But the bottom line is that two and a half years has gone by and father has not been able to take sufficient steps to demonstrate that he is capable of providing a stable, secure home and supportive environment for his daughter. Or is capable of making her a priority. So it continues to be my testimony that an alternative permanency goal is indicated at this time. [NT 100, ln 4-25]

passive interest in the development of the child.'" Id. at 855 (quoting In re C.M.S., 832 A.2d 457, 462 (Pa. Super. 2003)); accord In re K.Z.S., 946 A.2d 753, 759 (Pa. Super. 2008).

## CONCLUSION

The evidence discussed above amply supported the Court's conclusion that Father had nearly two years to demonstrate his commitment to parent the child. Father chose not to avail himself of the available resources to nourish the parent-child relationship and understand her needs. Father failed to provide the consistent and steady contact/visitation over a period of time sufficient to demonstrate a serious intent to re-establish parental responsibilities. A "'parent who cannot or will not meet the requirements within a reasonable time following intervention by the state may properly be considered unfit'" and have his parental rights terminated. K.Z.S., 946 at 759 (quoting In re B.L.L., 787 A.2d 1007, 1013 (Pa. Super. 2001)). The Court finds the evidence more than sufficient to conclude that Father cannot or will not remedy the issues that brought the child into care nor is willing to make the child a priority in his life. The child's bond with the Biological Father "no longer helps but rather hinder[s] the child".[2] It is clear that the foster home provides security for the child and that the child is bonded to them. CYF has carried the burden of proving by clear and convincing evidence that Father's rights should be terminated to serve the child's best interest. The Court is hopeful that the foster parents (paternal grandfather and his paramour) will still allow for contact and communication with Father, so that the bond is not entirely broken. Therefore, for these reasons, the Court's order should be affirmed.

---

[2] In re P.A.B., 570 A.2d 522, 526 (Pa. Super. 1990)

BY THE COURT:

The Hon. David L. Spurgeon